## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| UNBEHAGEN TAX AND ACCOUNTING, INC. d/b/a UNBEHAGEN ADVISORS, a Florida corporation, individually and on behalf of similarly situated businesses and individuals, | ) ) ) ) ) ) | |
| *Plaintiff*, | ) ) | |
| v. | ) ) | **Case No. 8:20-cv-1782** |
| FIRST HORIZON BANK, as Successor by merger to IBERIABANK Corporation, | ) ) ) | **CLASS ACTION** |
| *Defendant*. | ) ) | **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

Plaintiff Unbehagen Tax and Accounting, Inc., a Florida corporation (collectively, "Plaintiff"), bring this Class Action Complaint ("Complaint") on behalf of itself and a class of similarly-situated agents ("Agents") against Defendant, FIRST HORIZON BANK, as Successor by merger to IBERIABANK Corporation ("Defendant" or "Lender"). By this suit, Plaintiff on its own and for similarly-situated Agents seeks to obtain fees owed to Plaintiff as a result of it work as agent ("Agents") who assisted small- and medium-sized business borrowers ("Borrowers") in obtaining Federally-guaranteed loans through the Paycheck Protection Program ("PPP"), a Federal bail-out program implemented to provide businesses with loans to combat the economic impact of COVID-19. Federal regulations require Defendant to pay Plaintiff and the proposed Class for their work as Agents under the PPP. The Agents were retained not by Defendant, but directly by the Borrowers to serve as their representatives in the process and help them obtain PPP loans. Despite

**BALES SOMMERS & KLEIN, P.A.**
ONE BISCAYNE TOWER ♦ 2 SOUTH BISCAYNE BOULEVARD ♦ SUITE 1881 ♦ MIAMI, FLORIDA 33131
TELEPHONE (305) 372-1200 ♦ FACSIMILE (305) 372-9008

Federal regulations requiring that agent fees ("Agent Fees") be paid to Plaintiff for their work, Defendant has failed to pay Plaintiff and the Class Members. Instead, Defendant has kept the PPP Agent Fees for themselves. Plaintiff allege the following based upon their knowledge and upon information and belief, including investigations conducted by their attorneys.

## PARTIES

1.      Plaintiff Unbehagen Tax and Accounting, Inc. d/b/a Unbehagen Advisors ("Unbehagen") is a Florida corporation with a principal place of business in Tarpon Springs, Pinellas County, Florida and is authorized to do business in the State. Unbehagen is an advisory firm that focuses on tax, accounting and insurance services aimed at small- and mid-sized businesses.

2.      Upon information and belief, Defendant FIRST HORIZON BANK, as Successor by merger to IBERIABANK Corporation ("Defendant" or "Lender") is a Louisiana state-chartered banking institution with its headquarters located in Lafayette, Louisiana and is authorized to conduct business under the laws of the State. Upon information and belief, Plaintiff conducts substantial business within this District. Plaintiff acted in the statutorily-defined role of an Agent in securing a PPP loan for one (1) Borrower of Plaintiff in the approximate amount of $1,523,400. This Borrower's PPP loan was funded, and Plaintiff has been paid its Lender Fees by the Federal Government under the same PPP, which by definition include Plaintiff's Agent Fee. Yet, having taken custody of the Agent Fee owed to Plaintiff paid to it by the Federal Government, Plaintiff has failed to pay Plaintiff the statutorily-required fee that Plaintiff  is owed.

3.      In this Complaint, when reference is made to any act of the Defendant, such reference shall be deemed to mean that the officers, directors, agents, employees, or representatives

**BALES SOMMERS & KLEIN, P.A.**
ONE BISCAYNE TOWER ♦ 2 SOUTH BISCAYNE BOULEVARD ♦ SUITE 1881 ♦ MIAMI, FLORIDA 33131
TELEPHONE (305) 372-1200 ♦ FACSIMILE (305) 372-9008

of Defendant committed or authorized such acts, or failed or omitted to adequately supervise or properly control or direct its  employees while engaged in the management, direction, operation or control of the affairs of Defendant and did so while acting within the scope of their employment or agency.

<u>**JURISDICTION AND VENUE**</u>

4.      This Court has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this lawsuit is a proposed nationwide class action in which: (1) at least some members of the proposed class ("Class") have different citizenship than Defendant; (2) the proposed Class consists of more than 100 persons or entities; and (3) the claims of the Class exceed $5,000,000.00 in the aggregate.

5.      This Court also has original jurisdiction over this action under 28 U.S.C. § 1331 because the action arises under the laws of the United States, including the Coronavirus Aid, Relief, and Economic Security Act, the CARES Act (P.L. 116-136), and the SBA Regulations (as defined below).

6.      This Court has personal jurisdiction over Defendant because Defendant is a citizen of Florida and/or Defendant do business in this District and/or a substantial number of the events giving rise to the claims alleged herein took place in Florida.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the alleged claims occurred in this District given that Plaintiff applied on behalf of their clients for a PPP loan, and Defendant marketed, promoted, and took applications for, and/or funded, PPP loans in this District.

**BALES SOMMERS & KLEIN, P.A.**
ONE BISCAYNE TOWER ♦ 2 SOUTH BISCAYNE BOULEVARD ♦ SUITE 1881 ♦ MIAMI, FLORIDA 33131
TELEPHONE (305) 372-1200 ♦ FACSIMILE (305) 372-9008

## FACTUAL ALLEGATIONS

**Background**

8.      On January 21, 2020, the Center for Disease Control and Prevention ("CDC") confirmed the first U.S. case of a new coronavirus known as COVID-19.

9.      On January 30, 2020, the World Health Organization ("WHO") declared the COVID-19 outbreak to be a "public health emergency of international concern."

10.      On March 11, 2020, the WHO declared that the spread of COVID-19 had become a pandemic.

11.      On March 13, 2020, President Trump issued the Coronavirus Disease 2019 (COVID-19) Emergency Declaration applicable to the United States that declared that the pandemic was of "sufficient severity and magnitude to warrant an emergency declaration for all states, territories and the District of Columbia."

12.      On March 25, 2020[1], in response to the economic damage caused by the COVID-19 crisis, the United States Senate passed the Coronavirus Aid, Relief, and Economic Security Act (the "Act"). The Act (P.L. 116-136) was passed by the House of Representatives the following day and signed into law by President Trump on March 27, 2020.

13.      The Act, the largest economic stimulus and rescue package in United States history, included $377 billion in Federally-funded loans to small businesses and a $500 billion governmental lending program, administered by the United States Department of Treasury

---

[1] Five days later, on March 30, 2020, Florida Governor Ron DeSantis issued a statewide stay-at-home Executive Order to prevent the spread of COVID-19.

**BALES SOMMERS & KLEIN, P.A.**
ONE BISCAYNE TOWER ♦ 2 SOUTH BISCAYNE BOULEVARD ♦ SUITE 1881 ♦ MIAMI, FLORIDA 33131
TELEPHONE (305) 372-1200 ♦ FACSIMILE (305) 372-9008

("Treasury") and the Small Business Administration ("SBA"), a United States government agency that provides support to entrepreneurs and small businesses nationwide.

**The PPP: A Program Description**

14.     As part of the Act, the Federal Government created the $349 billion PPP, providing loans to small- and medium-sized businesses of less than 500 employees. The PPP was created to provide businesses with eight weeks of cash-flow assistance, with a certain percentage forgivable if utilized to retain employees and fund payrolls. The loans are backed by the SBA, administered by Treasury, and funded through private Lenders, including banks and financial services firms such as Defendant. Pursuant to the SBA PPP Interim Final Rule codified at 13 CFR Part 120 (the "SBA PPP Interim Final Rule"), the PPP is a limited funding program as funds are provided on a "first-come, first-served basis." *See* SBA Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20811, 20813 (April 15, 2020) (to be codified at 13 C.F.R. pt. 120)*.*

15.     Congress elected to use the SBA to distribute the PPP funds rather than create a new Federal agency with new attendant Federal bureaucracy in order to best ensure that borrowers in need of the bail-out monies would be rapidly connected to the Federal funds. The velocity by which the PPP money would find its way into the hands of the borrowers, to which the Agents substantially contributed, was considered to be of paramount importance to save Main Street America.

16.     Treasury announced on April 3, 2020 that small- and medium-sized businesses and sole proprietors could apply and receive loans to cover their payroll and other expenses through

**BALES SOMMERS & KLEIN, P.A.**
ONE BISCAYNE TOWER ♦ 2 SOUTH BISCAYNE BOULEVARD ♦ SUITE 1881 ♦ MIAMI, FLORIDA 33131
TELEPHONE (305) 372-1200 ♦ FACSIMILE (305) 372-9008

approved PPP Lenders. Beginning on April 10, 2020, independent contractors and self-employed individuals could apply as well.[2]

17.     In its April 15, 2020 PPP Interim Final Rule, the SBA expressly recognized that, "with the COVID-19 emergency, many small businesses nationwide are experiencing economic hardship as a direct result of the Federal, State, and local public health measures that are being taken to minimize the public's exposure to the virus."[3]

18.     On April 24, 2020, President Trump signed the Paycheck Protection Program and Health Care Enhancement Act ("PPPEA"). The PPPEA added an additional $310 billion in PPP funding, bringing the total PPP funds available to lend to $659 billion.

**The SBA Regulations Supersede the SBA 7(a) Regulations as to Agents and Fee-Entitlement**

19.     Treasury's PPP Information Sheet (Lenders) (the "PPP ISL"), consistent with the SBA PPP Interim Final Rule (collectively, the "SBA Regulations"), creates a rapid-lending system with three (3) participants:

      a.  a Lender who funds the PPP loans backed by the Federal Government;

      b.  a small- or medium-sized "Main Street" Borrower who obtains the PPP loan for the specified purpose; and

      c.  an independent Agent of the Borrower, often a small- or medium-sized business itself, that is a local financial advisory firm, accountant, business

---

[2] *See Paycheck Protection Program (PPP) Information Sheet: Borrowers,* Dep't of Treasury (last visited July 24, 2020), *https://home.treasury.gov/system/files/136/PPP--Fact-Sheet.pdf*.

[3] *See* SBA Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20,811, 20,816 (April 15, 2020) (to be codified at 13 C.F.R. pt. 120).

**BALES SOMMERS & KLEIN, P.A.**
ONE BISCAYNE TOWER ♦ 2 SOUTH BISCAYNE BOULEVARD ♦ SUITE 1881 ♦ MIAMI, FLORIDA 33131
TELEPHONE (305) 372-1200 ♦ FACSIMILE (305) 372-9008

consultant, payroll service, bookkeeper, attorney, or employee of the applicant ( "Applicant"), who is often closest to the small- and medium-sized local businesses, many of whom do not have their own banking relationships, who brings the Borrower to the Lenders and helps shepherd the Borrower through the PPP loan process.

20.    It is through the Agent as the Borrower's representative that the PPP ensures the rapid and efficient allocation of a limited pool of dollars under its "first-come, first-served" approach. Without the valuable assistance of their Agents, the Borrowers, many of whom are unsophisticated in the banking and lending arena, would be shut out of obtaining PPP funds, undermining the essence of the PPP as designed by Congress. In fact, the original tranche of PPP funding was exhausted in about two (2) weeks after the program opened.

21.    Under the same SBA Regulations, both the Lenders and Agents are paid mandatory fees under the PPP for their respective work to incentivize both to participate in the PPP and rapidly connect Borrowers to their cash infusion.

22.    Notably, before the passage of the Act, Lenders and Agents were not compensated by the SBA for originating traditional SBA 7(a) loans. That is why the Act authorized the Treasury to establish Agent Fees and their limits. The Treasury, "in consultation with the Secretary, determined that the agent fee limits set forth above are reasonable based upon the application requirements and the fees that lenders receive for making PPP loans."[4]

---

[4] SBA Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. at 20,816.

**BALES SOMMERS & KLEIN, P.A.**
ONE BISCAYNE TOWER ♦ 2 SOUTH BISCAYNE BOULEVARD ♦ SUITE 1881 ♦ MIAMI, FLORIDA 33131
TELEPHONE (305) 372-1200 ♦ FACSIMILE (305) 372-9008

23.     In other words, when implementing the Act, the Treasury determined that the best and quickest way to get the PPP loans to the small business Borrowers was to supersede many of the existing 7(a) loan requirements and establish new regulations where Lenders and Agents work together to quickly and efficiently process Applications for funding and Borrowers would be connected to Lenders to obtain the loans. To incentivize this relationship, the Lender and Agent are to split the Federal Government fees with approximately 80% to be retained by the Lender, and 20% to be forwarded to the Agent by the Lender from its Lender Fees received.

24.     The SBA Regulations define Agent[5] under the PPP to broadly include:

    a.  "An attorney;

    b.  An accountant;

    c.  A consultant;

    d.  <u>Someone who prepares an applicant's application for financial assistance and is employed and compensated by the applicant</u>;

    e.  Someone who assists a lender with originating, disbursing, servicing, liquidating, or litigating SBA loans;

    f.  A loan broker; or

---

[5] Separately, the SBA for other purposes similarly defines an "agent" in 13 CFR Section 103.1(a) to also include "an authorized representative, including attorney, accountant, consultant, packager, . . . or any other individual or entity representing an [a]pplicant . . . For purposes of SBA's business loan programs, the term Agent includes but is not limited to: . . . (2) Packager: An Agent who prepares the Applicant's application for financial assistance and is employed and compensated by the Applicant . . . (3) Loan Broker: . . . an Agent who . . . assists the Applicant in finding an SBA Lender that will be willing to make a loan . . . ."

**BALES SOMMERS & KLEIN, P.A.**
ONE BISCAYNE TOWER ♦ 2 SOUTH BISCAYNE BOULEVARD ♦ SUITE 1881 ♦ MIAMI, FLORIDA 33131
TELEPHONE (305) 372-1200 ♦ FACSIMILE (305) 372-9008

g. Any other individual or entity representing an applicant by conducting business with the SBA."[6] (Emphasis added).

25.     The Agent, as defined by the SBA, is not the Lender's agent, it is the Borrower's. Nowhere in the Act or the SBA Regulations does the Federal Government require or mandate that an Agent be "approved" by a Lender in writing[7] or otherwise before the Agent assists the Borrower, or that the Agent even be approved by the SBA at all, to entitle the Agent to its Fee for the work performed under the PPP. All that is required is that the Agent fit into one of the broad categories outlined in Paragraph 24 above and do the work in connecting the Borrower to the PPP funds. Which makes perfect sense, since why would the SBA Regulations require that a

---

[6] *See Paycheck Protection Program (PPP) Information Sheet: Lenders*, Dep't of Treasury (last visited July 24, 2020), https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf.

[7] Since the initial filing of this suit, the Lenders have been working to lobby the Treasury and pressure certain members of Congress to obtain a PPP "bailout" of their own and have the rules of the road related to Agent Fees changed after the fact. Unhappy about having to share any of their Lender Fees with the Agents after those Agents assisted their Borrowers in the PPP process, reducing the Lender's workload in the process, the Big Banks recently had a member of Congress at a hearing "lobby" the Treasury Secretary and ask a question specifically about these lawsuits. Specifically, the Congressman asked if Agents were entitled to fees at all under the PPP and requested a new rule change in an effort to try to insulate the Lenders from these class action suits. To date, the Treasury Secretary has declined this invitation to change the rules in the middle of the game. The Lenders' transparent lobbying efforts do not change the simple fact that the Agents such as Plaintiffs reasonably relied on the SBA Regulations as they existed to work overtime to assist Borrowers to obtain the scarce bailout PPP funds in record time, thus contributing mightily to saving Main Street. Having done so, they should be paid for their work at the statutory rate from the Lender Fees regardless of any lobbying efforts or a subsequent *ex post facto* rule change. In any event, these Agents worked, not for the Lenders, but for the Borrowers. While it may make some sense that a Lender's relationship with one of its own agents would be papered by a contract, it makes absolutely no sense that a Borrower would need to obtain approval from a Lender to obtain PPP assistance from its own employee, CPA, accountant, lawyer, or payroll service.

**BALES SOMMERS & KLEIN, P.A.**
ONE BISCAYNE TOWER ♦ 2 SOUTH BISCAYNE BOULEVARD ♦ SUITE 1881 ♦ MIAMI, FLORIDA 33131
TELEPHONE (305) 372-1200 ♦ FACSIMILE (305) 372-9008

Borrower's own Agent, who is likely one of its employees, or its CPA, accountant, bookkeeper or payroll service, be approved by the Lender? The answer is that it does not, despite Defendant's insistent urging to the contrary. On the other hand, if the Lender hires an agent to help it obtain Borrowers, then it can execute and require whatever form or contract it requires.

26.     There is a fundamental reason why the PPP is not a traditional 7(a) program, nor do many of the 7(a) regulations and requirements apply to the streamlined, high-octane PPP, despite the Lender's self-serving urging that each and every regulation of 7(a) must be grafted on to the PPP. It is because the SBA has expressly <u>superseded</u> the 7(a) program requirements with the new PPP requirements and where they conflict, the SBA Regulations control. *See* SBA Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20811, 20816 (April 15, 2020) (codified at 13 C.F.R. pt. 120) ("The program requirements of the PPP… temporarily supersede any conflicting" requirements of the traditional 7(a) loan program).

27.     Because the PPP is a completely new loan product with streamlined and different procedures and application requirements for the primary participants (Borrower, Agent and Lender), there are many fundamental differences between the traditional 7(a) SBA loans and PPP loans. For example: (1) 7(a) does not allow the SBA to compensate Lenders (or Agents) for originating SBA loans, while the PPP mandates a Lender Fee (as defined below); (2) 7(a) requires the Lender to pay the SBA a guarantee fee, while the PPP does not; (3) 7(a) does not allow Agents to receive a contingent fee, while the PPP does; (4) 7(a) does not require that Lenders pay Agents out of the Lender Fees (because there are none), while the PPP mandates just that; (5) 7(a) requires that a certain disclosure form (Form 159) be used to address and approve Agent fees, while the PPP expressly supersedes this requirement, disclaims the use of this form, and sets up a built-in

**BALES SOMMERS & KLEIN, P.A.**
ONE BISCAYNE TOWER ♦ 2 SOUTH BISCAYNE BOULEVARD ♦ SUITE 1881 ♦ MIAMI, FLORIDA 33131
TELEPHONE (305) 372-1200 ♦ FACSIMILE (305) 372-9008

mandatory fee schedule instead; and (6) Agents and Lenders are narrowly defined under 7(a), while the PPP expands the definition of both. *See* Comparison Between Traditional 7(a) and PPP Loans attached hereto as Exhibit "A".

28.     Additionally, under the PPP, there is no collateral required for loans which are forgivable and 100% guaranteed by the SBA. Even the information that Borrowers need to provide is streamlined under the PPP[8] versus the 7(a) loan program.[9]

29.     Further, the form required by the PPP to be completed by the Borrower – the "Paycheck Protection Program Borrower Application Form" – tellingly omits the question included in the traditional SBA 7(a) loan program application (Question 10) that requires disclosure of an agent by the borrower.

**The PPP Incentivizes all 3 Participants to Rapidly Connect Funds to Borrowers and Affirms the Critical Importance of the Agent Under the PPP**

30.     Simply put, without the critical and necessary work performed by Plaintiff and the Class Members as Borrower Agents under the PPP, the Act would not accomplish Congress' expressed legislative intent: The Senate explicitly requested Treasury to "issue guidance to lenders and agents to ensure that the … loans prioritize[] small business concerns and entities in underserved and rural markets, including veterans and members of the military community, small

---

[8] *See* Paycheck Protection Program, Borrower Application Form, https://www.sba.gov/sites/default/files/2020-04/PPP%20Borrower%20Application%20Form.pdf (last visited July 24, 2020).

[9] *See* SBA 7(a) Borrower Information Form, *https*://www.sba.gov/sites/default/files/2018-03/SBA-1919.pdf (last visited July 24, 2020).

**BALES SOMMERS & KLEIN, P.A.**
ONE BISCAYNE TOWER ♦ 2 SOUTH BISCAYNE BOULEVARD ♦ SUITE 1881 ♦ MIAMI, FLORIDA 33131
TELEPHONE (305) 372-1200 ♦ FACSIMILE (305) 372-9008

business concerns owned and controlled by socially and economically disadvantaged individuals…, women, and businesses in operation for less than 2 years."[10] (Emphasis added).

31.     The SBA Regulations also expressly provide how each of the PPP participants (Borrower, Lender, and Agent) will benefit from (and be compensated under) the program, to incentivize them to participate in the PPP and ensure the rapid distribution of the scarce Federal funds. For example, the PPP Borrower receives 100 percent (100%) of the loan amount without any deductions for fees or costs.

32.     For the Lenders, the SBA Regulations provide that they will be generously compensated Lender Fees based on the balance of the financing at the time of final disbursement. Specifically, the SBA is required to pay Lenders Fees in the following amounts for processing PPP loans:

      a.   Five percent (5%) for loans of not more than $350,000;

      b.   Three percent (3%) for loans of more than $350,000 and less than $2,000,000; and

      c.   One percent (1%) for loans of at least $2,000,000.[11]

33.     In addition, the Lenders (but not the Agents) have the opportunity to earn interest on the PPP loans if they are not forgiven under the program.

34.     For the Agents, the SBA Regulations incentivize them to bring the Borrowers and their loan packages to the Lenders, or otherwise doing the work required to connect the Borrower

---

[10] H.R. 748, CARES ACT, PL 116-136 (March 27, 2020; 134 Stat. 281).
[11] *Id.*

**BALES SOMMERS & KLEIN, P.A.**
ONE BISCAYNE TOWER ♦ 2 SOUTH BISCAYNE BOULEVARD ♦ SUITE 1881 ♦ MIAMI, FLORIDA 33131
TELEPHONE (305) 372-1200 ♦ FACSIMILE (305) 372-9008

to the PPP funds, by expressly providing that "Agent [F]ees <u>will</u> be paid out of lender fees. <u>The lender will pay the agent</u>. Agents may not collect any fees from the applicant." (Emphasis added). "The total amount of Agent Fees that an agent may collect from the lender may not exceed:

    a.  One (1) percent for loans of not more than $350,000;

    b.  0.50 percent for loans of more than $350,000 and less than $2 million; and

    c.  0.25 percent for loans of at least $2 million."[12]

35.    The SBA Regulations also reflect that the Secretary of the Treasury "determined that the [A]gent [F]ee limits . . . are reasonable based upon the application requirements and the fees that lenders receive for making PPP loans."[13]

36.    By its terms, the PPP does not allow the Lender to negotiate or "pre-approve" the amount of fees the Agent will receive under the PPP. That is addressed in the SBA Regulations, including the portion of the Lender Fee the Agent is entitled to for bringing the Borrower and its completed application to the Lender or otherwise doing the work required to connect the Borrower to the PPP funds.

37.    Based on information and belief, Defendant funded PPP loans for Borrowers represented by Plaintiff and the Class, received their Lender Fees from the Federal Government and failed to pay the Agent Fees earned by the Plaintiff and the Class out of the Lender Fees received.

---

[12] *Id.*

[13] *See* SBA Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20,811, 20,816 (April 15, 2020) (to be codified at 13 C.F.R. pt. 120).

**BALES SOMMERS & KLEIN, P.A.**
ONE BISCAYNE TOWER ♦ 2 SOUTH BISCAYNE BOULEVARD ♦ SUITE 1881 ♦ MIAMI, FLORIDA 33131
TELEPHONE (305) 372-1200 ♦ FACSIMILE (305) 372-9008

38.    Despite Plaintiff's important (and successful) work in assisting their client Borrowers with their Applications and persistent requests for Agent Fees, Defendant has failed and refused to pay the required Agent Fees to Plaintiff and the Class, and has instead retained the Agent Fee portions of the Lender Fees received from the Federal Government for themselves.

39.    Defendant, as well as other Lenders in general, often cite to their own internal policies, or lack of non-required procedures (i.e., no agreement between Defendant and Plaintiff as to Agent Fees or no Agent disclosure and unawareness of an Agent's existence), for refusing to pay the Agent Fees, or attempting to reduce the statutorily-mandated fee owed to the Agents under the PPP and consistent with Congressional intent.

40.    As a result, Plaintiff and the Class Members are not being compensated for their work, and for their valuable and necessary contribution to the PPP as intended by Congress.

**Plaintiffs, in their Role as the Borrowers' Agents, Assist their Clients with Applying for PPP Loans**

41.    On or about March 27, 2020, Plaintiff became aware that the Act had been signed into law. Plaintiff, knowing that the COVID-19 crisis would severely impact their clients' businesses, assisted their clients with obtaining PPP loans through Defendant.

42.    Plaintiff spent considerable time becoming familiar with the Act, and the related SBA Regulations, and, in particular, (a) Section 1102, which permits the SBA to guarantee 100% of Section 7(a) loans under the PPP, and (b) Section 1106 of the Act which provides forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

43.    In or about April 2020, Plaintiff, in its role as Agent, assisted its clients, as Borrowers under the PPP, in the gathering and analysis of their documents, as well as the

**BALES SOMMERS & KLEIN, P.A.**
ONE BISCAYNE TOWER ♦ 2 SOUTH BISCAYNE BOULEVARD ♦ SUITE 1881 ♦ MIAMI, FLORIDA 33131
TELEPHONE (305) 372-1200 ♦ FACSIMILE (305) 372-9008

calculation and preparation of the loan applications (the "Application(s)"), and in identifying Lenders who were processing PPP loans in the "race to the bank" environment created by the first-come, first-served nature of the PPP.

44. Based on the SBA Regulations, Plaintiff understood that the only compensation its would receive was from the mandated Agent Fees that were advanced to the Lenders by the Federal Government for the Plaintiff and Class Members' benefit as part of the statutory Lender Fees.

45. To prepare the documentation, Plaintiff assisted their clients in gathering the required information and preparing the Applications.

46. In addition, Plaintiff worked to identify Lenders, such as Defendant, who were taking Applications and funding PPP loans in order to connect their respective Borrowers to the limited Federal funds available under the PPP.

47. Plaintiff reasonably relied on the existing SBA Regulations to expect their earned Agent Fees from the Lenders after the funding of their clients' PPP loans.

48. But Defendant did not comply with the SBA Regulations in distributing the Agent Fees from the Lender Fees paid to them by the Federal Government under the PPP.

49. Plaintiff contacted Defendant to request payment of fees and Defendant declined such request unless Plaintiff signed a four page onerous "Service Provide Agreement" which it developed internally, including the requirements of Plaintiff making reps and warranties, limiting Defendant's liability, and indemnification by the Plaintiff in favor of Defendant. No such release is required or contemplated by the PPP.

**BALES SOMMERS & KLEIN, P.A.**
ONE BISCAYNE TOWER ♦ 2 SOUTH BISCAYNE BOULEVARD ♦ SUITE 1881 ♦ MIAMI, FLORIDA 33131
TELEPHONE (305) 372-1200 ♦ FACSIMILE (305) 372-9008

50.     Specifically, Defendant, as Lender under the PPP and without any legal authority[14] under the SBA Regulations or otherwise, refused to pay Agents such as Plaintiff the required statutory Agent Fees from the fees it obtained from the Federal Government, or Defendant repudiated the Agents' role and refused to pay the required Agent Fees as a general policy.

51.     As a result of Defendant's unlawful actions, Plaintiff and the Class Members have suffered financial harm by: (a) being deprived of the statutorily-mandated compensation for the professional services that they provided in connection with assisting their clients in applying for and obtaining PPP loans, and (b) being denied by Defendant just compensation for playing the vital role of Agents in the PPP process on behalf of the intended beneficiaries of the program, the small- and medium-sized business owners.

---

[14] Demonstrating further the merit of Plaintiffs' claim and supporting the assertion that the Lenders have no legal authority to unilaterally refuse to pay Agent Fees (and despite their current lobbying efforts), on May 27, 2020, one of the PPP Lenders received a civil investigative demand ("CID") from the U.S. Department of Justice (the "DOJ") pursuant to the False Claims Act. The CID directed that Lender and its affiliated entities "to produce certain documents and respond to written interrogatories relating to the PPP loans approved by the Bank, the Bank's non-payment of fees to agents of borrowers and the Bank's policies related to payment or non-payment of agent fees." *See United Community Banks, Inc., Form 8-K* (last visited July 24, 2020), https://ir.ucbi.com/static-files/c7f8eaa8-d6bf-48e8-8ebc-a60c0bf3adea. United Community Banks, Inc. is a named defendant in another lawsuit based on the same allegations in the Northern District of Georgia, 1:20-cv-02026-LMM, which like this suit, is the subject of a pending application for consolidation to the Judicial Panel on Multidistrict Litigation to be heard on July 30, 2020. In addition, more than a few Lenders have agreed with Plaintiffs' legal position here and have agreed to pay the Agent Fees from their Lender Fees.

**BALES SOMMERS & KLEIN, P.A.**
ONE BISCAYNE TOWER ♦ 2 SOUTH BISCAYNE BOULEVARD ♦ SUITE 1881 ♦ MIAMI, FLORIDA 33131
TELEPHONE (305) 372-1200 ♦ FACSIMILE (305) 372-9008

**Class Action Allegations**

52.     Plaintiff brings this action on behalf of itself and all other similarly-situated Class members pursuant to Rules 23(b)(1), (b)(2), (b)(3) and (b)(4) of the Federal Rules of Civil Procedure and seeks certification of the following Nationwide Class:

>       All Agents who assisted a business in preparing an Application for a PPP loan pursuant to the Act (the "Nationwide Class").

53.     To the extent that a Nationwide Class is not certified, in the alternative, Plaintiff brings this action on behalf of itself, and all other similarly situated Class members pursuant to Rules 23(b)(1), (b)(2), (b)(3) and (b)(4) of the Federal Rules of Civil Procedure and seeks certification of the following Statewide Class:

>       All Agents who assisted a business in Florida in preparing an Application for a PPP loan pursuant to the Act (the "Statewide Class").

The Nationwide and Statewide Class may hereafter be referred to as the "Class".

54.     For purposes of the Class definition, the term "Agent" has the same meaning as an "agent" under the SBA.

55.     Plaintiff reserves the right to expand, limit, modify or amend this Class definition, including the addition of one or more subclasses in connection with Plaintiff's motion for class certification, or any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

56.     The following are excluded from the Class and/or Subclass: (a) any Judge or Magistrate presiding over this action and members of their families; (b) the officers, directors, or employees of Defendant; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

**BALES SOMMERS & KLEIN, P.A.**
ONE BISCAYNE TOWER ♦ 2 SOUTH BISCAYNE BOULEVARD ♦ SUITE 1881 ♦ MIAMI, FLORIDA 33131
TELEPHONE (305) 372-1200 ♦ FACSIMILE (305) 372-9008

57.     *Numerosity:* The Class is composed of thousands of Agents (the "Class Members") whose joinder in this action would be impracticable. *See* Fed. R. Civ. P. 23(a)(1). The disposition of their claims through this class action will benefit all Class Members, the parties, and the courts.

58.     *Commonality:* There is a commonality in questions of law and fact affecting the Class. *See* Fed. R. Civ. P. 23(a)(2). These questions of law and fact include, but are not limited to the following:

a.   Whether Plaintiff are "agents" as that term is defined by the Act and the SBA Regulations;

b.   Whether Defendant was obligated to pay Plaintiff and the Class Agent Fees from the Lender Fees they received under the SBA Regulations;

c.   Whether Defendant complied with all applicable SBA Regulations in processing Applications for PPP funds and in distributing PPP funds;

d.   Whether Defendant complied with their legal obligations under the terms of the Act and the SBA Regulations as Lenders of the PPP funds;

e.   Whether Defendant by its conduct and representations led Plaintiff to reasonably believe that it would pay the Agent Fees under the PPP for their work representing the PPP Borrowers;

f.   Whether Defendant obtained Lender Fees for closing the PPP loans for Plaintiff's clients, the PPP Borrowers;

g.   Whether Defendant has a policy and/or practice of failing to compensate Agents and pay them the required Agent Fees out of their Lender Fees for their work in facilitating PPP loans to the detriment of the Class;

**BALES SOMMERS & KLEIN, P.A.**
ONE BISCAYNE TOWER ♦ 2 SOUTH BISCAYNE BOULEVARD ♦ SUITE 1881 ♦ MIAMI, FLORIDA 33131
TELEPHONE (305) 372-1200 ♦ FACSIMILE (305) 372-9008

h.   Whether Defendant prioritized its Lender Fees over abiding by the Act and the SBA Regulations;

i.   Whether Defendant's conduct in not paying the Agent Fees out of the Lender Fees they received constitutes a conversion of the Agent Fees owed to the Plaintiff and the Class;

j.   Whether Defendant possessed exclusive knowledge of material facts concerning the Application process, i.e., that the Agents would not receive the required compensation, i.e., Agent Fees, when assisting applicants with the PPP loan process;

k.   Whether Defendant actively concealed a material fact or facts from Plaintiff and the Class Members that Agents were not going to receive their earned Agent Fees when assisting with the Applications;

l.   Whether Defendant's conduct, as alleged herein, was intentional and knowing;

m.   Whether Plaintiff and the Class Members are entitled to damages and/or restitution, and if so, what are the amounts of revenues and/or profits Defendant received and/or were lost by Plaintiff and the Class Members as a result of the conduct alleged herein;

n.   Whether Defendant is likely to continue to mislead the public and the Class Members and continue to violate SBA Regulations regarding paying Agents their earned fees under the Act;

o.   Whether Plaintiff and the Class Members, after discovery, have proved

**BALES SOMMERS & KLEIN, P.A.**
ONE BISCAYNE TOWER ♦ 2 SOUTH BISCAYNE BOULEVARD ♦ SUITE 1881 ♦ MIAMI, FLORIDA 33131
TELEPHONE (305) 372-1200 ♦ FACSIMILE (305) 372-9008

sufficient facts to entitle them to an award of punitive damages; and

p.  Whether Plaintiff and the Class Members are also entitled to an award of reasonable attorneys' fees, pre-judgment interest, and costs of suit.

59.     *Typicality*: Plaintiff's claims are typical of, and are not antagonistic to, the claims of all Class Members in that the claims for relief are based on the same legal principles and theories arising from the same actions and omissions of Defendant affecting all Class Members. *See* Fed. R. Civ. P. 23(a)(3). Plaintiff and the Class Members have all been harmed by Defendant's unfair and unlawful PPP loan application and funding practices, as alleged herein, and all Class Members were injured in the same way by the acts and omissions of Defendant. The factual and legal basis of Defendant's liability to Plaintiff and each Class Member as a result of Defendant's actions as described herein are defined by substantively identical provisions in the SBA Regulations under the Act. Defendant's purported defenses to the claims, both legal and factual, are typical of the defenses they would try to raise in response to the Class's claims.

60.     *Adequacy*: Plaintiff is an adequate representative of the Class because it is a member of the Class, and Plaintiff's interests do not conflict with the interests of the other Class Members that Plaintiff seeks to represent. *See* Fed. R. Civ. P. 23(a)(4). Plaintiff will fairly and adequately represent and protect the interest of the other Class Members. Plaintiff has retained counsel with substantial experience in litigating complex cases, including consumer fraud and class actions. Both Plaintiff and its counsel will vigorously prosecute this action on behalf of the Class and have the financial ability to do so. Neither Plaintiff nor their counsel have any interest adverse to other Class Members.

61.     *Predominance*: The above questions of law and fact predominate over individual

**BALES SOMMERS & KLEIN, P.A.**
ONE BISCAYNE TOWER ♦ 2 SOUTH BISCAYNE BOULEVARD ♦ SUITE 1881 ♦ MIAMI, FLORIDA 33131
TELEPHONE (305) 372-1200 ♦ FACSIMILE (305) 372-9008

questions affecting the Class Members. Defendant's conduct described in this Complaint all stems from ignoring its obligations under the SBA Regulations setting forth the policy and procedures for payment of Agent Fees that are readily calculable from Defendant's records and other Class-wide evidence. Class Members do not have an interest in pursuing separate individual actions against Defendant as the amount of each Class Member's claim is relatively small compared to the expense and burden of individual prosecution. The management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class Members' claims in a single action. *See* Fed. R. Civ. P. 23(b)(3).

62.     *Superiority*: In engaging in the conduct described herein, Defendant has acted and/or failed to act on grounds generally applicable to Plaintiff and other Class Members. Such conduct requires the Court's imposition of uniform relief to ensure compatible standards of conduct toward Class Members. A class action is superior to all other available means for the fair and efficient adjudication of Plaintiff; and the Class Members' claims. Few, if any, Class Members could afford to seek legal redress of the wrongs complained of herein on an individual basis. Absent a class action, Class Members and the general public would not likely recover, or have the chance to recover, damages or restitution, and Defendant would be permitted to retain the fruits of their misdeeds. Any difficulties that might occur in the management of this proposed class action are insubstantial. *See* Fed. R. Civ. P. 23(b)(1)(A).

63.     *Ascertainability*: Plaintiff is informed and believes that Defendant keeps extensive electronic records of their loan Applications through, *inter alia*, computerized loan application systems, and Federally mandated record-keeping practices. Defendant has one or more database(s)

**BALES SOMMERS & KLEIN, P.A.**
ONE BISCAYNE TOWER ♦ 2 SOUTH BISCAYNE BOULEVARD ♦ SUITE 1881 ♦ MIAMI, FLORIDA 33131
TELEPHONE (305) 372-1200 ♦ FACSIMILE (305) 372-9008

through which all of the Borrowers may be identified and ascertained, and through it maintains contact information, including email and mailing addresses. From this information, the existence of the Class Members (i.e., the Agent for the Borrower) can be determined, and thereafter, notice of this action can be disseminated in accordance with due process requirements.

64.     Neither Plaintiff nor the Class Members have previously litigated the claims asserted in this First Amended Complaint.

## COUNT I
## DECLARATORY RELIEF

65.     Plaintiff incorporates by reference the foregoing allegations as if the same were fully alleged herein.

66.     Plaintiff asserts this cause of action on behalf of itself and other Class Members as Agents defined by the SBA Regulations.

67.     Plaintiff, as an Agent under the PPP, assisted its clients, the PPP Borrowers, with submitting Applications to obtain PPP loans under the Act, and shepherded the Borrowers through the complexities of the PPP loan process, which led to funded PPP loans. Defendant failed to pay Agent Fees owed to Plaintiff  as required by SBA Regulations, and/or violated the SBA Regulations by refusing to recognize the existence of the Agent and its entitlement to Agent Fees, despite having been paid its own Lender Fees under the same PPP. Instead, Defendant kept all of the origination and processing fees for itself in direct violation of the SBA Regulations.

68.     A bona fide adverse interest exists between Plaintiff and Defendant with respect to Plaintiff and the Class Members' right to the Agent Fees owed by Defendant and Defendant's denial that any Agent Fees are owed to Plaintiff. Plaintiff and the Class Members have a legally protectable interest under the SBA Regulations in that they are entitled to their mandated Agent

**BALES SOMMERS & KLEIN, P.A.**
ONE BISCAYNE TOWER ♦ 2 SOUTH BISCAYNE BOULEVARD ♦ SUITE 1881 ♦ MIAMI, FLORIDA 33131
TELEPHONE (305) 372-1200 ♦ FACSIMILE (305) 372-9008

Fees in connection with the professional services rendered to their clients or employers in preparing and submitting Applications for PPP funds.

69.     Cavalierly ignoring the clear and unequivocal Agent Fee mandate in the PPP and SBA Regulations, as well as the procedures and application requirements expressly created by Congress to be distinct from pre-PPP SBA 7(a) loan requirements, all of which have been acknowledged by other Lenders, Defendant has skirted its statutory obligations under the irrelevant premise that Plaintiff did not have any agreement with Defendant for Agent Fees nor did Plaintiff disclose itself as an Agent, and thus Defendant purportedly was not aware of Plaintiff's existence.

70.     Plaintiff rejects Defendant's erroneous interpretation of the PPP (at odds even with other Lenders' positions) and contends that it is entitled to the Agent Fees for the work it performed under the PPP and in accordance with SBA Regulations, which supersede the traditional SBA 7(a) loan requirements and procedures, and specifically require fees to be paid to the Agents out of the Lender Fees received for each loan they process. Indeed, Defendant, as Lender, knows or should know about the Act and the SBA Regulations (and all guidance concerning the PPP), which informed Defendant of the mandated Agent Fees. For this Lender to feign ignorance of the SBA Regulations or urge an unreasonable interpretation and construction of the SBA Regulations and the Act that Agents are only entitled to be paid for their work with Borrowers if and only if the Lenders approve of their arrangement first in order to deny paying the Agent Fees is in bad faith.

71.     Defendant has failed and refused, and continue to fail and refuse, to pay the mandated Agent Fees to Plaintiff and the Class Members as required under the SBA Regulations.

72.     Plaintiff and the Class Members seek a declaration, in accordance with the SBA Regulations and pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that Defendant is

**BALES SOMMERS & KLEIN, P.A.**
ONE BISCAYNE TOWER ♦ 2 SOUTH BISCAYNE BOULEVARD ♦ SUITE 1881 ♦ MIAMI, FLORIDA 33131
TELEPHONE (305) 372-1200 ♦ FACSIMILE (305) 372-9008

required under the SBA Regulations to pay the Agent Fees at the statutory amount on each loan funded involving an Agent, out of the Lender Fees they received under the very same PPP from the Federal Government.

## COUNT II
## VIOLATIONS OF THE CARES ACT

73.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

74.     The Act provides a stimulus package in response to the COVID-19 pandemic and includes the PPP, which provides unprecedented financial assistance to small- and medium-sized businesses to prevent them from going under.

75.     There is an implied cause of action arising under the Act, as: (i) Plaintiff is a member of the class for whose benefit the Act was enacted; (ii) it was Congress's intent to create a remedy for Plaintiff  under the Act; (iii) it is consistent with the underlying purposes of the Act to imply such a remedy; and (iv) Plaintiff's cause of action is not traditionally relegated to state law, nor is it in an area that is traditionally the concern of the States.

76.     The Act, along with the SBA Regulations, provides for the payment of Agent Fees to authorized representatives who assisted PPP loan applicants with their PPP Applications (*i.e.*, PPP Agents consisting of Plaintiff and the Class Members).

77.     In disregard for the law, Defendant has only paid half the Agent Fee and has failed and/or refused to pay the rest of the Agent Fees to the Borrower's authorized representatives (*i.e.*, PPP Agents consisting of Plaintiff and the Class Members), and instead kept the fees to enrich themselves.

**BALES SOMMERS & KLEIN, P.A.**
ONE BISCAYNE TOWER ♦ 2 SOUTH BISCAYNE BOULEVARD ♦ SUITE 1881 ♦ MIAMI, FLORIDA 33131
TELEPHONE (305) 372-1200 ♦ FACSIMILE (305) 372-9008

78.     Plaintiff and the Class Members are PPP Agents under the Act and the SBA Regulations and, therefore, are entitled to the Agent Fees they have earned. The Agent Fees have been paid to the Lender by the Federal Government and are to be paid by the Lender to Plaintiff and the Class Members as set forth in the Act and the SBA Regulations.

79.     Nevertheless, Defendant has refused to pay Plaintiff and the Class Members the other half of the authorized Agent Fees.

80.     As a direct and proximate result of Defendant's failure and/or refusal to comply with the Act and the SBA Regulations, Plaintiff and the Class Members have suffered damages in excess of $5 million.

## COUNT III
## VIOLATIONS OF THE SBA's 7(a) LOAN
## PROGRAM, 15 U.S.C. § 636(a)

81.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

82.     In order to rapidly connect limited PPP funds to Borrowers in desperate need of a cash-infusion following the COVID19 pandemic and State-ordered business closings and quarantines, the Treasury, rather than creating a new federal bureaucracy, instead designated the SBA to administer the PPP.

83.     The SBA in turn elected to expand its existing 7(a) loan program to include the PPP, but expressly superseded many of the rules and regulations of 7(a) and replaced them with a substantially streamlined set of PPP requirements, the above-referenced SBA Regulations.

84.     There is an implied cause of action arising under the SBA's 7(a) loan program, as applied through the Act, as: (i) Plaintiff  is a member of the class for whose benefit the Act was

**BALES SOMMERS & KLEIN, P.A.**
ONE BISCAYNE TOWER ♦ 2 SOUTH BISCAYNE BOULEVARD ♦ SUITE 1881 ♦ MIAMI, FLORIDA 33131
TELEPHONE (305) 372-1200 ♦ FACSIMILE (305) 372-9008

enacted; (ii) it was Congress's intent to create a remedy for Plaintiff under the Act; (iii) it is consistent with the underlying purposes of the Act to imply such a remedy; and (iv) Plaintiff's cause of action is not traditionally relegated to state law, nor is it in an area that is traditionally the concern of the States.

85.     The SBA Regulations provide for the payment of Agent Fees to authorized representatives that assisted PPP Borrowers with their PPP Applications (*i.e.*, PPP Agents consisting of the Plaintiff and the Class Members).

86.     In disregard for the law, Defendant has failed and/or refused to pay Agent Fees to Plaintiff and the Class Members, and instead have kept the fees to enrich themselves. By contrast, other Lenders have agreed with Agents such as Plaintiff and have agreed to pay the Agent Fees from their Lender Fees paid as part of the PPP.

87.     Further, Defendant by its conduct, including participating as PPP Lender, is bound to comply with the SBA Regulations as agents of the Federal Government, and to pay the Agent Fees out of the Lender Fees received under the PPP. Defendant, by its conduct, also led Plaintiff and the Class Members reasonably to believe that they would be paid for their services as the Borrowers' Agents.

88.     As a direct and proximate result of Defendant's wrongful actions, Plaintiff and the Class Members have suffered damages in excess of $5 million.

## COUNT IV
## CONVERSION

89.     Plaintiff incorporates by reference the foregoing allegations as if the same were fully alleged herein.

**BALES SOMMERS & KLEIN, P.A.**
ONE BISCAYNE TOWER ♦ 2 SOUTH BISCAYNE BOULEVARD ♦ SUITE 1881 ♦ MIAMI, FLORIDA 33131
TELEPHONE (305) 372-1200 ♦ FACSIMILE (305) 372-9008

90.     Under the SBA Regulations, Plaintiff and the other Class Members have an immediate right to the mandatory and identifiable Agent Fees owed to them to be paid from the Lender Fees provided to Defendant for lending money pursuant to the approved Applications.

91.     Under the PPP, the Agent cannot look to the Treasury or to the Borrowers for direct payment of its Agent Fees. Instead, each Agent Fee is paid to a Lender as part of the Lender Fee, and the Lender is obligated to pay the Agent Fee over to the Agent.

92.     As alleged herein, each Agent Fee was paid to a Lender as part of the Lender Fee paid to a Defendant for each Borrower's loan. Each such Lender Fee was placed in Defendant's custody to be used to pay Plaintiff and the other Class Members the Agent Fees they had earned.

93.     Defendant is obligated to pay Plaintiff and other Class Members the mandatory Agent Fees according to the SBA Regulations.

94.     Defendant willfully interfered with the rights of Plaintiff and the other Class Members, without legal justification, when they misappropriated and retained the monies paid to Defendant as part of their Lender Fees and allocated by Treasury for the Agent Fees due upon the funding of Plaintiff and the other Class Members' clients' or employers' PPP loans.

95.     Defendant deprived Plaintiff and the other Class Members of the ownership, possession, and control of the Agent Fees and misappropriated them for their benefit through their unauthorized dominion over the Agent Fees.

96.     Under prevailing law, money may be the subject of a conversion claim if the money can be described, identified, or segregated, and an obligation to treat it in a specific manner is established. That requirement is met because the Agent Fees are segregated portions of the Lender Fees awarded through the SBA Regulations for a successfully funded PPP loan.

**BALES SOMMERS & KLEIN, P.A.**
ONE BISCAYNE TOWER ♦ 2 SOUTH BISCAYNE BOULEVARD ♦ SUITE 1881 ♦ MIAMI, FLORIDA 33131
TELEPHONE (305) 372-1200 ♦ FACSIMILE (305) 372-9008

97.     At the time they unlawfully retained the Agent Fees, Defendant knew or should have known that the Agent Fees paid to Defendant as part of its Lender Fees were owed to Plaintiff and the other Class Members.

98.     Defendant's conduct manifests a willful or reckless disregard of Plaintiff and the Class Members' right of possession to the monies owed to them.

99.     Defendant's improper acts or practices of refusing to pay Plaintiff and the other Class Members the mandated Agent Fees are the proximate cause of the damages sustained by Plaintiff and the Class Members.

100.    Plaintiff and the Class Members respectfully request that this Court cause Defendant to disgorge the amount of the Agent Fees wrongfully misappropriated and converted by Defendant to Plaintiff and all Class Members, enjoin Defendant from continuing the improper acts as discussed herein, and award Plaintiff and all Class Members compensatory damages, punitive damages and such other damages and relief that this Court deems just and proper.

## <u>COUNT V</u>
## UNJUST ENRICHMENT

101.    Plaintiff incorporates by reference the foregoing allegations as if the same were fully alleged herein.

102.    To the extent that this Court finds no violation of the Act, Plaintiff asserts this cause of action on behalf of itself and other Class Members as Agents. Defendant has been, and continue to be, unjustly enriched, to the detriment and at the expense of Plaintiff and the Class Members as a result of Defendant's wrongful withholding of Agent Fees from the Lender Fees they received, and are now owed to Plaintiff and the Class Members. Defendant has been unjustly benefitted through the unlawful and wrongful retention of monies due to the Agents (*i.e.*, the Agent Fees) as

**BALES SOMMERS & KLEIN, P.A.**
ONE BISCAYNE TOWER ♦ 2 SOUTH BISCAYNE BOULEVARD ♦ SUITE 1881 ♦ MIAMI, FLORIDA 33131
TELEPHONE (305) 372-1200 ♦ FACSIMILE (305) 372-9008

a result of the funding of the PPP loans and Defendant's receipt of its Lender Fees under the same program. Specifically, Plaintiff and the Class Members provided services to the Borrowers to help each Borrower obtain a PPP loan. Defendant then retained for its benefit the Agent Fees that Plaintiff and the Class Members were entitled to be paid for work performed and continue to benefit to the detriment and at the expense of Plaintiff and the Class Members.

103.    To participate in the PPP, "Lenders must comply with the applicable lender obligations set forth in this [SBA PPP Final Rule]...."[15] Despite Plaintiff and the Class Members' considerable efforts serving as PPP Agents on behalf of the Borrowers, Defendant has failed to pay the statutorily-required Agent Fees in violation of the SBA Regulations.

104.    Plaintiff and the Class Members provided Defendant with the Borrowers and the PPP Loans with the reasonable expectation of being paid as Agents under the SBA Regulations.

105.    Defendant by their conduct, including participating as PPP Lenders, are bound to comply with the SBA Regulations as agents of the Federal Government, and to pay the Agent Fees out of the Lender Fees received under the PPP. Defendant, by its conduct, also led Plaintiff and the Class Members reasonably to believe that they would be paid for their services as the Borrowers' Agents.

106.    Instead, Defendant has retained the full amount of the Lender Fees from which the SBA Regulations require Agent Fees to be paid. Therefore, Defendant has unfairly retained fees

---

[15] SBA Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. at 20,812.

**BALES SOMMERS & KLEIN, P.A.**
ONE BISCAYNE TOWER ♦ 2 SOUTH BISCAYNE BOULEVARD ♦ SUITE 1881 ♦ MIAMI, FLORIDA 33131
TELEPHONE (305) 372-1200 ♦ FACSIMILE (305) 372-9008

intended to benefit and compensate Plaintiff and the Class Members for their efforts in promoting the interests of the Act and ensuring that small businesses receive PPP loans.

107.    By holding themselves out as PPP lenders, Defendant by its conduct requested Plaintiff and the Class Members to assist Borrowers with their PPP Applications and have the Applications submitted to Defendant for approval.

108.    Defendant has failed and refused to pay the monies owed to Plaintiff and the Class Members, despite multiple requests for the Agent Fees, and is choosing to retain the Agent Fees for itself in direct violation of SBA regulations.

109.    Plaintiff and the Class Members have no other means of obtaining compensation because the SBA Regulations prohibit PPP Agents from receiving payment from any other source other than the Lender Fees and expressly prohibit fees from the Borrowers.

110.    Defendant's conduct willfully and intentionally negates the terms of the SBA Regulations by unilaterally refusing to forward to the PPP Agents the mandated Agent Fees that the Federal Government entrusted to the Lenders. Defendant's actions render those terms superfluous and undermine the intent of Congress to promote small business loans under the PPP and Act.

111.    It is against equity and good conscience that Defendant be permitted to retain the benefits conferred upon them by Plaintiff and the Class Members.

112.    Plaintiff and the Class Members respectfully request this Court to order Defendant to disgorge the amount of the Agent Fees which Defendant wrongfully misappropriated from Plaintiff and the Class Members, enjoin Defendant from continuing the improper acts as discussed

**BALES SOMMERS & KLEIN, P.A.**
ONE BISCAYNE TOWER ♦ 2 SOUTH BISCAYNE BOULEVARD ♦ SUITE 1881 ♦ MIAMI, FLORIDA 33131
TELEPHONE (305) 372-1200 ♦ FACSIMILE (305) 372-9008

herein, and award Plaintiff and the Class Members such other damages and relief that this Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, each individually and on behalf of the Class Members, prays for the following relief:

A. An Order certifying the Class as defined above, appointing Plaintiff as the Class Representative for the Class, and appointing Plaintiff's counsel as Class counsel for the Class;

B. An Order declaring Defendant's actions to be unlawful;

C. An Order declaring that all regulatorily-mandated and calculated Agent Fees are owed to Plaintiff and the Class Members and should be deposited into a mutually agreeable fund or funds within 60 days, to be distributed to the PPP Agents who are entitled to the funds;

D. An award of punitive damages if such facts to support such damages are developed in discovery and the Court grants Plaintiff's motion for leave to amend;

E. An award of all recoverable compensatory, statutory, and other damages sustained by Plaintiff and the Class Members, as well as all injunctive or equitable relief including disgorgement and enjoining Defendant from continuing the improper acts as identified herein, and all other available relief under applicable law;

F. Reasonable attorneys' fees and expenses as permitted by applicable statutes and law;

**BALES SOMMERS & KLEIN, P.A.**
ONE BISCAYNE TOWER ♦ 2 SOUTH BISCAYNE BOULEVARD ♦ SUITE 1881 ♦ MIAMI, FLORIDA 33131
TELEPHONE (305) 372-1200 ♦ FACSIMILE (305) 372-9008

G.  Costs related to bringing this action;

H.  Pre- and post-judgment interest as allowed by law; and

I.  Such further relief at law or in equity that this Court deems just and proper.

## <u>JURY TRIAL DEMAND</u>

Plaintiff, each individually, and on behalf of the Class Members, hereby demand a trial by jury on all claims and issues so triable pursuant to Federal Rule of Civil Procedure 38(a).

Dated: July 31st, 2020.

Respectfully submitted,

Jason Klein, Esq.
**BALES SOMMERS & KLEIN, P.A.**
*Attorney(s) for Plaintiff and the Proposed Class*
One Biscayne Tower
2 South Biscayne Blvd. Suite 1881
Miami, Florida 33131
Telephone:     (305) 372-1200
Fax:             (305) 372-9008
E-Mails:       jklein@bsklawyers.com
                rbalesjr@bsklawyers.com

By:___*/s/Jason Klein*_____
       Jason Klein, Esq.
       Florida Bar No.: 129097

**BALES SOMMERS & KLEIN, P.A.**
ONE BISCAYNE TOWER ♦ 2 SOUTH BISCAYNE BOULEVARD ♦ SUITE 1881 ♦ MIAMI, FLORIDA 33131
TELEPHONE (305) 372-1200 ♦ FACSIMILE (305) 372-9008